**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| BARBARA ARMSTRONG, | : | |
| *Plaintiff,* | : | Case No. 1:24-cv-00424 |
| | : | |
| | : | Judge Jeffery P. Hopkins |
| vs. | : | |
| | : | |
| WESTERN AND SOUTHERN | : | |
| FINANCIAL GROUP, LLC, | : | |
| | : | |
| *Defendant.* | : | |

## OPINION AND ORDER

Plaintiff Barbara Armstrong ("Armstrong" or "Plaintiff") brings this action against her former employer, Defendant Western and Southern Financial Group, LLC, aka Western-Southern Agency, Inc., Western-Southern Life Assurance Company aka Western & Southern Life Insurance (collectively, "Western & Southern") alleging violations of Section 510 and Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified under 29 U.S.C. §§ 1132(a)(3) and 1140. Compl., Doc. 1. Pending before the Court is Western & Southern's Motion to Dismiss (the "Motion") (Doc. 6). In the Motion, Western & Southern asks this Court to dismiss Plaintiff's ERISA claims, under Fed. R. Civ. P. 12(b)(6). Armstrong filed a Response opposing the Motion (Doc. 9), to which Western & Southern filed a Reply (Doc. 12). The matter has been fully briefed and is now ripe for decision.

For the reasons set forth herein, Defendant's Motion (Doc. 6) is **GRANTED,** and this Court hereby **DISMISSES** Plaintiff's Complaint (Doc. 1) with **PREJUDICE**.

## I.    BACKGROUND

### A. Summary of the Facts

Barbara Armstrong began working for Western & Southern as an insurance sales representative on November 15, 2004. Compl., Doc. 1, ¶ 7. She was employed at Western & Southern continuously for eighteen years in that role. *Id.* As part of her employment Armstrong was eligible for, and participated in, Western & Southern's Long Term Incentive and Retention Plan (the "Plan"). *Id.* ¶ 8. In early 2022 Armstrong notified Western & Southern that she intended to retire and was electing to commence receiving distributions of Plan benefits beginning around May 1, 2022. *Id.* ¶ 35. However, on February 17, 2022, Western & Southern suspended Armstrong's employment after notifying her that it was investigating allegations of potential sales practices policy violations. *Id.* ¶ 36. Thereafter, on April 28, 2022, just days before Armstrong had elected to commence receiving Plan benefits, Western & Southern sent a letter terminating Armstrong's employment and alleging that she had breached "multiple company policies, including the Western & Southern Financial Group Code of Conduct and Business Ethics, the Western & Southern Life Sales Practices policy, and the terms of [her] Sales Representative's Agreement." *Id.* ¶ 38.

### B.  Procedural History

It appears, initially, that either Armstrong or her attorneys, or both, were confused over what claims she should bring and where she should file suit to address her grievances concerning the treatment she had received from Western & Southern. In October 2023, Armstrong filed suit against Western & Southern in North Carolina state court. In that action, she alleged five causes of action, including "claims of age discrimination, wrongful termination, defamation, intentional infliction of emotional distress, and unjust enrichment

1

for Western & Southern's fraudulent behavior resulting in [her] termination for cause and the forfeiture of her vested benefits." Compl., Doc. 1, ¶ 78. On December 7, 2023, Western & Southern removed the case to the District Court for the Western District of North Carolina (Case No. 3:23-cv-840), alleging that Armstrong's claims for unjust enrichment were preempted by ERISA and that the proper venue for the case was in federal court. *Id.* ¶ 79. Subsequently, on January 11, 2024, Armstrong voluntarily dismissed the complaint in that case, without prejudice. *Id.* ¶ 80.

Then, in January 2024, Armstrong commenced an arbitration proceeding against Western & Southern, alleging age discrimination and unlawful interference with vested benefits under Section 510 of ERISA, along with related state law claims. *Id.* ¶ 81. In response, Western & Southern moved to dismiss the arbitration action, asserting that the § 510 claim was governed by ERISA, and that "the Plan required claims be filed in federal court in Hamilton County, Ohio." *Id.* ¶ 82. On May 18, 2024, the arbitrator dismissed Armstrong's action, "finding that the arbitration agreement did not cover [Armstrong's] claims arising under ERISA and direct[ed] [Armstrong] to file the claim in Federal Court at Western & Southern's request." *Id*. ¶ 83.

Armstrong filed the current lawsuit against Western & Southern in this District on August 12, 2024—approximately twenty-eight months (or just under two and half years) after receiving two letters on April 28, 2022 from Western & Southern both terminating her employment and denying her claim for Plan benefits. It should be noted that Armstrong filed an administrative appeal of the April 28 letter denying benefits that resulted in a final determination letter being issued by Western & Southern on December 8, 2022, also denying benefits. Doc. 6, Def. Ex. E, PageID 268

In the Complaint filed in this Court, Armstrong contends that Western & Southern's conduct violated § 510 of ERISA by terminating her "with the specific intent to interfere with her attainment and receipt of benefits under the [Plan] and [to] retaliate against her for seeking benefits under the Plan." Compl., Doc. 1, ¶ 86 (Count I). Armstrong also claims that Western & Southern violated § 510 by "interfere[ing] with her rights under the plan and retaliat[ing] against her for seeking benefits under the plan." *Id.* ¶ 98 (Count II). Finally, in Count III, Plaintiff seeks equitable relief for the claims asserted under Counts I and II, pursuant to § 502(a)(3), in the form of an order requiring (1) that Western & Southern "rescind its employment and/or human resources determination," (2) that Western & Southern provide "restitution of benefits wrongfully withheld," and (3) that the Court order "plan reformation to eliminate the 6-month [statute of limitations]."[1] Doc 9, PageID 404. As noted, Western & Southern denies these claims and seeks dismissal of Armstrong's Complaint for failure to state any claims upon which relief may be granted, under Rule 12(b)(6).

---

[1] The Court states here the condensed version of the equitable relief sought contained in the Response. Doc. 9, PageID 404. The more expansive version of the equitable relief sought by Armstrong appears in the Complaint which provides: "Plaintiff is entitled to equitable remedies, including 1) an order requiring Defendants to pay Plaintiff the difference between what it would have paid Plaintiff had Plaintiff never been fraudulently terminated from employment before she could retire as intended; 2) disgorgement of profits on amounts wrongfully withheld; 3) restitution to Plaintiff of benefits wrongfully withheld as a result of Western & Southern's fraudulent and negligent conduct and/or as a result of its failure to follow the plan terms and ERISA's claim regulations; 4) an order enjoining Western & Southern from invoking the Plan's 6-month statute of limitations to the extent applicable; and 5) an order for Western & Southern to pay all attorney's fees, costs and pre-and post-judgment interest on all amounts unlawfully withheld as a result of Western & Southern's interference with Plaintiff's rights under Section 510 of ERISA and/or as a result of Western & Southern's unlawful termination and fraudulent allegations causing Plaintiff to be terminated for 'Cause'. In addition, and/or in the alternative, Plaintiff is entitled to equitable relief in the form of an order directing Western & Southern to rescind its termination of Plaintiff, take into consideration all information obtained by the NCDOI [North Carolina Department of Insurance] and SCDOI [South Carolina Department of Insurance] during their respective investigations, and all other information relevant to Western & Southern's unfounded and fraudulent accusations." Compl., Doc. 1, ¶¶ 113–14.

## II.     STANDARD OF REVIEW

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

Ordinarily, a court will decide a Rule 12(b)(6) motion to dismiss based on the pleadings. However, "when a document is referred to in the pleadings and is integral to the

claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). ERISA plan documents not attached to a complaint are considered where a plaintiff's claims are "based on rights under the plans which are controlled by the plans' provisions as described in the plan documents" and where the documents are "incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *see City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 659 n.6 (6th Cir. 2005).

Further, "[t]he court may 'consider a document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" *Mozingo v. Orkin, Inc.*, No. 4:10-CV-71, 2011 WL 845896, at *4 (E.D.N.C. Mar. 8, 2011). *See Williams v. Cigna Corporation*, No. 5:10-CV-00155, 2010 WL 5147257, at *5 (W.D. Ky. Dec. 13, 2010) ("[A] document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings . . . when [that] document is referred to in the complaint and central to the plaintiff's claim." (citing *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)); *Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924–25 (N.D. Ohio 2009). When this occurs, "the defendant may submit an authentic copy of the document to the court without the requirement that the motion to dismiss be converted into a motion for summary judgment." *Greenberg*, 177 F.3d at 514. *See Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005) (finding the district court properly considered the Plan document on a motion to dismiss).

5

### III.    LAW AND ANALYSIS

Western & Southern advances three arguments in support of its Motion for dismissal of the Complaint. Western & Southern contends that Plaintiff's §§ 510 and 502(a)(3) claims must be dismissed because: (1) her claims are barred by a contractual statute of limitations; (2) her claims are barred by the statute of limitations that would apply in the absence of a contractual limitations period (*i.e.*, two years for torts in the state of Ohio, *see* Ohio Rev. Code § 4102.052(C)(1)),[2] and (3) the Sixth Circuit does not permit the type of artful pleading engaged in by Plaintiff to avoid the applicable limitations periods. Doc. 6, PageID 224–25. Because the artful pleading argument turns on whether Plaintiff may avoid the applicable limitations period by recasting the substance of her claims as a § 502(a)(3) claim, the Court will address first the latter argument raised by Western & Southern in support of its Motion to dismiss Armstrong's claims.

#### A. Plaintiff cannot repackage her claims.

ERISA remedies focus on the "the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015). Of the six ERISA remedial provisions, two are at issue here: 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3). Those provisions read as follows:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

. . .

---

[2]    Although Plaintiff suggests that Ohio Rev. Code § 2305.09(D)'s four-year statute of limitations applies, Doc. 9, PageID 413–15, the plain language of the statute limits its reach to claims "not arising on contract." Because Plaintiff's claim arises from a contractual relationship—and the parties' agreement expressly provides for a shorter limitations period—§ 2305.09(D) is inapplicable. Moreover, as to Count III, the six-year statute of limitations likewise does not apply as Count III is an impermissible repackaging of claims, as noted below.

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Courts in this Circuit have long held that 29 U.S.C § 1132(a)(3) ("Section (a)(3)") "acts 'as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy.'" *Rochow*, 780 F.3d at 371 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). For this reason, a claimant cannot repackage a section (a)(1)(B) claim for individual benefits as a Section (a)(3) breach-of-fiduciary-duty claim to obtain equitable relief. *Rochow*, 780 F.3d at 373. Courts typically find that a Section (a)(3) claim is merely a repackaged section (a)(1)(B) claim whenever the claim could have been brought under section (a)(1)(B). *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007). Therefore, claims arising under Section (a)(3) are properly pled "only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under [section (a)(1)(B)] is otherwise shown to be inadequate." *Rochow*, 780 F.3d at 372; *see also Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x. 852, 860 (6th Cir. 2016) ("[A] claimant cannot recover under both [(a)(1)(B)] and [(a)(3)] for the same injury.").

Accordingly, for Armstrong to have pleaded a proper claim under Section (a)(3), her alleged injury must be separate and distinct from her denial of benefits. Plaintiff's alleged injuries here are not. Armstrong argues that Section (a)(3) applies because "the primary focus

7

is on the underlying reasons for the employer's actions, rather than enforcing benefits under the Plan." Doc. 9, PageID 407.

However, Plaintiff's requested relief in the case clearly demonstrates the relation of her claims to the denial of benefits. For example, Plaintiff requests that this Court order "[Western & Southern] to rescind its employment related decision to terminate Armstrong and its employment related decision that Armstrong violated company policy, its code of conduct, the employment agreement, or any other rule or regulation which caused it to terminate Armstrong." *Id.* at PageID 408. This alleged misconduct is the factual predicate central to Plaintiff's claim: the denial of benefits. Moreover, Armstrong requests an order compelling Western & Southern to fashion a "make-whole remedy payment of the difference between what it [Western & Southern] would have paid Armstrong had Armstrong never been fraudulently terminated … she seeks disgorgement of profits; and restitution." *Id*. However, there can be no cause for disgorgement but for the denial and withholding of benefits.

To illustrate the point more clearly, we look to the Sixth Circuit's decision in *Rochow.* In that action by a claimant seeking recovery for the wrongful denial of benefits, the Circuit held that "the denial of benefits necessarily results in a continued withholding of benefits until the denial is either finalized or rectified." *Rochow*, 780 F.3d at 374; *see also Davis v. Hartford life and Accident Ins. Co.*, 980 F.3d 541 (6th Cir. 2020). Here, as in *Rochow*, "the denial is the injury and the withholding is simply ancillary thereto …. Together they comprise a single injury." *Rochow*, 780 F. 3d at 374. Thus, under the controlling authority, Plaintiff's request for disgorgement reflects but one injury—the denial of benefits. As such, Plaintiff's claim is a benefits claim and 29 U.S.C. § 1132(a)(1)(B) is sufficient to provide a remedy.

8

**B. Plaintiff failed to plausibly allege §§ 510 and 502(a)(3) violations.**

Section 510 of ERISA makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled to under [a benefit] plan." 29 U.S.C. § 1140; *Williams v. Graphic Packaging Int'l, Inc.*, 790 F. App'x 745, 754 (6th Cir. 2019) (noting that ERISA "prohibits employers from terminating, or otherwise discriminating against, employees who choose to exercise a benefit to which they are entitled under their benefit plan"). Since its inception, the aim of § 510 has been to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested [plan] rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).

There exist only two types of § 510 claims under prevailing Sixth Circuit jurisprudence: "(1) a 'retaliation' claim where adverse action is taken because a participant availed [her]self of an ERISA right; and (2) an 'interference' claim where adverse action is taken as interference with the attainment of a right under ERISA." *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 627–28 (6th Cir. 2008) (citation omitted) (cleaned up). To state a prima facie case for retaliation, a plaintiff must show that "(1) [s]he was engaged in an activity that ERISA protects; (2) [s]he suffered an adverse employment action; and (3) a causal link exists between [her] protected activity and the employer's adverse action." *Williams*, 790 F. App'x at 754–55 (citing *Hamilton*, 522 F.3d at 628). To state a prima facie case for interference, a plaintiff must demonstrate: "'(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Bailey v. U.S. Enrichment Corp.*, 530 F. App'x 471, 477 (6th Cir. 2013) (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (*per curiam*)).

9

The Complaint Armstrong filed in this case is anything but a picture of clarity. As noted, however, the Complaint asserts three claims for relief, including Count I, alleging unlawful interference with attainment of benefits (ERISA § 510, 29 U.S.C. §§ 1140 and 1132(a)(3)) (Compl., Doc. 1, ¶¶ 84–93); Count II, alleging unlawful interference with Plaintiff's rights under the Plan (*id.* ¶¶ 94–104); and Count III, seeking equitable relief pursuant to ERISA § 1132(a)(3)) (*id.* ¶¶ 105–15). Plaintiff's claims fail to plead facts that satisfy the plausibility standard set forth in *Twombly* and *Iqbal*. Here, Plaintiff recites a sequence of events occurring before and after she was terminated upon being advised by Western & Southern that her claim for benefits under the Plan had been denied. In other words, Plaintiff seeks to characterize Western & Southern's conduct as something it was not—a violation of Sections 510 and 502(a)(3) of ERISA—when in reality it was nothing more than a denial of benefits under the Plan, albeit coupled with a separate letter terminating her employment.

On February 17, 2022, Western & Southern informed Armstrong that it was investigating "allegations of potential sales practices policy violations" and was "suspending her employment." Doc. 6, PageID 212. Armstrong merely refers to Western & Southern's decision to terminate her as "pretextual and fabricated," a "scheme," and that it was carried out by "actively hid[ing] information from Plaintiff, such as the information about the allegations against her." Compl., Doc. 1, ¶¶ 74, 95–97. These allegations do not constitute the type of plausible facts that permit a reasonable inference that Western & Southern was motivated to deny Plaintiff's benefits because of her decision to retire. Try as she might, on this record, Plaintiff has not alleged any facts that show that Western & Southern's conduct constituted "specific intent of violating ERISA," notwithstanding Armstrong's assertion that the North and South Carolina insurance authorities took no action against her for alleged

10

misconduct. To survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This, Plaintiff has failed to do.

### C. The statute of limitations bars Plaintiff's claim.

Because Plaintiff's claim is one for the denial of benefits and thus falls under 29 U.S.C. § 1132(a)(1)(B), the Plan's terms govern the relationship between the parties in this dispute. *See Lockett v. Marsh*, 354 F. App'x 984, 989 (6th Cir. 2009) ("In interpreting ERISA plans we apply the federal common law rules of contract interpretation and give effect to the unambiguous terms of the plan."). Moreover, "a contractual provision in a plan may specify a shorter limitations period as long as there is 'no controlling statute to the contrary' and the limitations period is reasonable." *Hewitt v. Western & Southern Fin. Grp. Flexible Benefits Plan*, No. 17-5862, 2018 U.S. App. LEXIS 9829, at *3 (6th Cir. April 18, 2018). ERISA does not explicitly provide for a limitations period for § 1132(a)(1)(B) claims, accordingly, courts must give effect to the plan's limitations provision unless it is unreasonably short. *Heimshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109 (2013). In this context, the Sixth Circuit has previously upheld a six-month limitation period contained in an ERISA plan. *See Claeys v. Aetna Life Ins. Co.*, 548 F. App'x 344, 346 (6th Cir. 2013).

Here, there is no dispute that the Plan contained a six-month statute of limitations clause. Compl., Doc. 1, ¶ 113. Thus, to bring her claims, Armstrong was required to follow the appeal process provided to her in the April 28, 2022 denial of benefits letter. Therein, the letter states specifically that no action "including, but not limited to administrative, claim or suit relating to or arising out of the Plan may be commenced or maintained more than 6 months following the later of the Executive Committee's or its designees *initial* claim decision

*or* the Executive Committee's decision on *review*…." Doc. 6-5, Def. Ex. E, PageID 269 (emphasis added).

Here, again, after receiving the April 28 letter, the record shows that on May 25, 2022, Plaintiff sent her own letter to the Benefits Department at Western & Southern requesting "all applicable plan documents…in order to know what to include in her appeal of the April 28, 2022 denial of benefits." Compl., Doc. 1, ¶ 70. Western & Southern then responded by sending Plaintiff a letter on June 1, 2022. That June 1 letter, included with it two documents: "the 2014 [Plan] and a copy of the April 28, 2022 notice of termination." *Id.* ¶ 71. After receiving the June 1 letter from Western & Southern, Armstrong did not appeal the April 28, 2022 denial of benefits because, according to her, "it was futile for Plaintiff to Appeal the April 28, 2022 adverse determination because Western & Southern's basis for terminating the Plaintiff was pretextual and fabricated…." *Id.* ¶ 74. Instead, Armstrong launched an administrative appeal of the April 28, 2022 denial of benefits that was also denied. In a letter dated December 8, 2022 sent to Armstrong (via FedEx), Western & Southern's Executive Committee's designee, the Secretary and Counsel for the company provided its final decision, denying Plaintiff's claim for benefits, as provided under 6.5 of the Plan (which reiterated the denial of benefits expressed in the April 28 letter Armstrong had received). Doc. 6-7, Def. Ex. G. Having received the "Executive Committee's decision on review," *see* Doc. 6-5, Def. Ex. E, PageID 269, it meant that Plaintiff was required to file a civil action "in federal Court in Hamilton County, Ohio" challenging the denial of benefits no later than June 8, 2023. Compl., Doc. 1, ¶ 82; *see also* Doc. 6-1, Def. Ex. A, PageID 252–55. However, Plaintiff did not file her Complaint with this Court until August 12, 2024—more than a year after the statute of limitations had already expired. Compl., Doc. 1, PageID 24. Thus, Armstrong

failed to bring an action within six-months after the final administrative decision was made denying her claim for benefits under the terms of the Plan she signed onto at Western & Southern. *Id.* ¶ 113.

Because ERISA does not explicitly provide for a limitations period for § 1132(a)(1)(B) claims, courts must give effect to the plan's limitations provision unless it is unreasonably short. *Heimshoff*, 571 U.S. at 109. Here, the limitations period of six months after the final decision of the Executive Committee or its designee specified in Western & Southern's Plan is not unreasonably short. Indeed, the Sixth Circuit has expressly held that a six-month limitation period contained in an ERISA plan is not unreasonably short. *Claeys*, 548 F. App'x at 346.

Because the Plan explicitly required Plaintiff to bring suit within six months of the final benefits determination, and because that limitations period has been deemed both reasonable and enforceable under *Heimshoff*, the governing precedent in this Circuit, Plaintiff's failure to timely file suit is fatal to her claims. As such, Armstrong's § 510 claims, as codified by § 1132(a)(1)(B), asserted under Counts I and II of the Complaint are time barred and must be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion to Dismiss Plaintiff's Complaint (Doc. 6) and **DISMISSES** Plaintiff's Complaint (Doc. 1) **WITH PREJUDICE**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

April 13, 2026

Jeffery P. Hopkins
United States District Judge